Good morning, Your Honours. Arwin Swank, appearing on behalf of Petitioner Ayubbhai Vahora. This is a compelling case in which all parties agree that were Mr. Vahora to be forced to return to India, he would face serious threats to his life and freedom. The sole issue... He got withholding, right? Yes, Your Honour, he did. So he's not about to be shunned back? No, Your Honour, he's not. Withholding, however, is a very limited form of relief under which Mr. Vahora would face permanent separation from his wife and children. Additionally, he is not allowed to leave the United States without forfeiting that relief. Okay, but you started saying if he was sent back, but he's not going to be sent back. Yes, Your Honour. So... I raised that issue... If he was sent back, but in fact there's no possibility at all he'll be sent back because he has withholding. Yes, Your Honour, I raised that issue merely to highlight the gravity of the danger that exists in Mr. Vahora in India, and the gravity of the danger that compelled him to seek asylum in 2002. Late. Yes, Your Honour, late. That is the issue... Unless there's a change in country conditions or personal conditions. Yes, Your Honour. My understanding of how the statute works is that in such a circumstance, his application would be late, but that lateness would be excused. You mean it wasn't within the one year, although you were allowed to do it after the one year under certain circumstances, in which case it is not late. It's timely. Yes, Your Honour. Don't be so agreeable always. Okay. It would be timely, and that is the issue. That is the sole issue before this Court, is whether or not the judge... I mean, he gets withholding based on everything that happened before he got here. He gets withholding based on the total circumstances presented in his case. So he qualifies for asylum at that point. What justifications are for waiting beyond the one-year period if he has the facts to support asylum before he even enters the country? It's not like, you know, there was not justification for asylum, and then a year passes and things get worse and say, well, I could have gone back six months ago, but I no longer can. All the facts are available to him. He could have filed a meritorious petition the first day on American soil and for the first succeeding 364 days after that, right? Well, Your Honour, there actually was no finding as to whether he would have qualified for asylum had he applied within the one year. All of the decisions in his case were rendered after the events of 2007. He got withholding. He got withholding. Yes, Your Honour. And withholding is a, you need to prove more for withholding than for asylum. So he gets withholding based on the evidence that existed prior to his coming in. We know he would have gotten withholding or asylum. It's pure arithmetic. Well, Your Honour, my understanding of what the grant of withholding was based on is that it was based on the totality of the evidence. Are you saying that there was more evidence in the withholding case than the evidence that was in existence one year from the date of his arrival? Yes, Your Honour. There was substantially more evidence, specifically the events of 2002. That they were a part of the withholding record? Yes, Your Honour, they were. Okay. But he didn't get, but the basis for the withholding was all facts that occurred before he arrived. I mean, he presented more evidence. Yes. But the actual grant of withholding was based on evidence of events that happened before he arrived. I don't believe the immigration judge actually parsed out the record in such a manner. Certainly, the events of 2002, which compelled Mr. Varai to apply for asylum, were a part of the record before the immigration judge. And I think the danger lies in trivializing the events of 2002. According to the Department of State report, the 2002 riots left an estimated 2,000 people dead and 100,000 people displaced. A majority of the victims of this rioting, this communal rioting, were Muslims. Well, let's read the IJ's decision. It's at page 6. It starts at page, I'm sorry, it has a base stamp of 6, so maybe it's either number 6. I'm looking at page 3 of the immigration decision, of the IJ's decision. Sorry, just to clarify, is this the first or the second of his decision? February 23rd, 2006. Thank you, Your Honor. This is the one where he grants, actually grants withholding. And it looks to me like all the things that the IJ relies on are things that happened before, to him personally, before he came to the United States. Yes, Your Honor, the IJ does. And then he specifically discounts. He says, I'm not taking into account stuff that happened in 2002, none of which seem to be aimed at the Respondent. Nor does it reflect that the Respondent was a witness. So then he goes on and he talks about all the things that happened to him when he was in the country. And so doesn't it seem like the withholding decision is based all on facts, and specifically the IJ did posit that, did say I'm not taking into account the 2002 stuff? Yes, Your Honor. You don't have to be agreeable. You can disagree. I'm just asking a question. Well, no, I think your statement as to what the IJ's, the content of the immigration judge's decision is not wrong. But I think that's the core of the immigration judge's error here. She completely discounted the events of 2002, even though those were. But what she held is that the facts that were applicable, that existed before he got here, were sufficient for withholding. And we know if it's sufficient for withholding, it's sufficient for asylum. And therefore, doesn't it follow, just a matter of simple arithmetic, that had he made, that he had a viable asylum claim the day he arrived in the United States? I would not dispute the finding that he had a viable asylum claim that he, the day he arrived in the United States. I would. Then he had to be a refugee. It leaves a sound definition where he was not interested in going back to India? Yes, Your Honor. When he arrived here in April. Absolutely, Your Honor. He was intending to go back to India. He was, Your Honor. And then things occurred in 2002. Precisely, Your Honor. Okay. As I understood Judge Kuczynski's question, the issue was whether or not he theoretically could have established asylum in 2001 when he arrived, had he sought asylum and been unwilling to return to his country at that time. He wasn't. So your position is that he has facts that justify asylum, but he doesn't feel like staying. Something happens later on. He says, at this point, I don't want to go back. And that resuscitates his expired period for asylum. Is that your position? Not exactly, Your Honor. I think it's really fundamental to this case not to trivialize the fact that, as Mr. Vohora credibly testified, he never intended to remain abroad permanently. There's no dispute as to his credibility here. So we have to accept his statements as true. And more importantly, as evidence of his intent to return to India, this is actually not the first time that Mr. Vohora had left India and then returned after an arrest. He did the same thing after his first arrest in 2000. He went to England. No, no, no. I certainly understand that, but the statute gives him a year. It says, look, if you're eligible for asylum, you've got a year to apply. If you don't sort of feel like doing it, that's okay. You don't have to do it, but your time's up. It's not like you became eligible for asylum or were going to extend the one year because you weren't eligible when you arrived. And all of a sudden, things go bad in your country, and now you can't go back. You're stuck here. But if you've got a year of eligibility and you're going to apply for it, I understand how you can extend that period. Well, the issue, Your Honor, is not this is not a case where Mr. Vohora simply sat in the United States, waited around, things didn't get any better, and he gave up. He decided that he had waited long enough, and he applied for asylum. That's not this case. This is a case where Mr. Vohora had every intention of returning to his country of origin, to his home, his family, his community. In India, up until events, independent, objectively verifiable events, made it impossible for him to do so. So under the Board's view, the past harms, Mr. Under the Board's view, Mr. Vohora would have been required to file an application for asylum within one year of his arrival, regardless of his ability and willingness to return to his home country, which flies in the face of the refugee definition. Moreover, it would have obliged him to file what would ultimately have been a meritless application for asylum, because he would have turned around and gone back to his family as soon as it was safe to do so, thereby abandoning whatever status he had obtained or the application that he had previously filed. And that's where I would suggest that the Court's decision in FACRI is helpful. Mr. Vohora should not be penalized for declining to clog the immigration courts with a meritless application, which is what this would have been had he filed it prior to the events of 2002. I notice that I'm over time. You are. Thank you. Thank you. May it please the Court, my name is Michelle Stark. I'm here representing Attorney General Eric Holder in this case. The issue before the Court is whether the Board appropriately found Mr. Vohora's asylum claim to be time-barred and that he failed to qualify for an exception to the one-year deadline based on changed circumstances. The record in this case well supports the Board's decision that the Petitioner failed to establish changed circumstances. When Petitioner left India the last time, he left because he was afraid. He had just been arrested for the second time in India. He had been detained for 15 days. He had been beaten badly. And he left India because he feared to remain and basically went to England. At the time that he was in England, he stayed there until his visa expired. And then instead of going back to India, he decided to get a fake visa and come to the United States because, again, he was afraid still to go back to India. When he was here and his fake visa expired after a few months, he again did not go back to India. At all times, he has been afraid to go back to India. He did not want to go back there. While at some point maybe in the future when things get better, maybe someday he would like to go back, that's the case with many asylum seekers. They apply for asylum because at the time they don't want to go back because they're afraid to go back to their country. Maybe at some point in the future, things will get better and they'd be willing to go back. That is not what the Congress intended when it wrote the statute as far as what it was focusing on for changed circumstances. It was focusing on objective changed circumstances in the country. Do you agree there are objective changed circumstances? That it's now much more serious than it was during his first year? No, because basically as the IJ and the board set out in their decisions, he had sufficient circumstances already. That's not what I said. I said, well, do you agree that they're more serious after that? Not whether he had them already. I'm explaining that the reason is no, I do not agree. You don't think any worse after the end of the first year? There were additional incidents, but the question is whether it materially changed his eligibility for asylum. And in that, the circumstances did not change because he was already eligible. Yes, there were additional. That's not the question. If you don't want to answer the question, don't. I am answering the question. The question was not whether did he have enough at the end of the year, but are they worse now? Are they changed since the end of the year? Not whether he would have been eligible. We're disagreeing. All right. You don't even want to let me finish a question. I don't care whether you don't want to answer it, but you will not talk while I'm talking. I apologize. All right. Never mind. Go ahead. Do whatever you want. I won't ask you any more questions. What I'm trying to explain is I think we're disagreeing on the meaning of changed circumstances. You are looking at whether there are additional facts that you can add to his asylum claim. Yes, there were, and there are additional bad facts. What I am saying is that legally the question is whether there's material changed circumstances, and the materiality is whether it affects his eligibility for asylum. It does not because he was already eligible based on the circumstances that already existed when he arrived in the United States. And so, yes, there were additional circumstances, but they did not materially affect, so therefore there were not changed circumstances within the legal meaning of the statute. Okay. Also, I would say that the petitioner raises the question about with respect to her, if she did not intend at the time that, or if he did not intend at the time that he arrived to apply for asylum, therefore he wasn't eligible for asylum. And the things that happened subsequently changed his mind. Again, this was something that was never raised, specifically this legal argument to the board, and therefore the petitioner failed to exhaust this argument before the board, and this court shouldn't reach it. If the court decides to reach it, then it should first get the board's opinion on that and remand on that particular point for the board to be able to discuss it, because it was not properly raised. The board did not have adequate notice that that was an issue that the petitioner was going to argue and that it needed to address. So if the court has no other questions, basically our argument is that petitioner already was eligible for asylum when he first arrived. He was granted withholding. If you read through both of the IJ's decision and the board decision, you will see that the IJ and the board focused on the circumstances that occurred prior to his leaving India. And yes, the IJ mentioned in, I think it was the March opinion, that there were additional things, but he already had reason to fear for his life or being mistreated in India before he left. And he should have realized, since he was detained twice, accused basically of fomenting dissent against the Hindus and the government, that he was already being targeted. He already was jailed twice. One of his construction projects was destroyed by the Hindu mobs. He was already being targeted. During one of the elections, they basically threatened him if he didn't support their Hindu candidate. And then he was harassed after that. So he was already being targeted, and he should have realized when he first arrived in the United States that that was the time to apply for asylum. Thank you. Thank you. Should I take a minute for rebuttal? No, the board's decision in this case precluded Mr. Vajendra from any eligibility for asylum, from being able to show changed circumstances, or presumably extraordinary circumstances, because he suffered persecution in the past. There's no support for that conclusion in the statute or the regs. And I think that the board could only arrive at that conclusion by conflating three separate elements in Mr. Bahura's asylum application, his subjective fear of future harm, his ability and willingness to return to India, and the existence of external circumstances which affected his eligibility. He was asked whether he feared returning to India when he left in December 2000, and he said yes. This is on page 237 of the record, page 46 of the hearing. So I'm still having trouble understanding your theory that at that point he – I mean, if he in fact feared returning to India at the time he left, and you've admitted, I think, you've conceded that there were facts that would have supported an asylum grant at that point, so you've got your fear from returning, and you've got the case for asylum. We know he has that because he got withholding. What justification is there for extending the one-year period? He had everything he needed, both sort of an unwillingness to return and an objective case for asylum. And the moment that he arrives in the United States – Your Honor, I would invite you again to look at the FACRI language, where that court – I'm sorry? I would invite you to look into the language of the FACRI decision at page – I'm sorry, 524F3rd at page 1063. The FACRI court noted – Okay. Let's look at that. Okay. Hold on a second. That's the one submitted in the 318 letter. Yes, Your Honor. Okay. What is it there that helps you? The court says that there can be changed circumstances which materially affect the applicant's eligibility for asylum, even if the alien always meant to apply for asylum and always feared persecution. These are two things which operate independently of one another. And there can exist these changed circumstances which affect the application for asylum, regardless of the subjective intent or the willingness to return to one's home country. No. You may not have the case for asylum at the time you have the intent. I mean, you can have changed circumstances in that you don't – you're afraid to go back, but you don't have the case for asylum. But in this case, he actually had the facts to support a change for asylum – an application for asylum, a grant of asylum. Your Honor, I don't believe that the existence of changed circumstances is dependent on whether or not an individual has suffered persecution in the past. There's nothing in the statute to link those two together. The Board conflated them, but in so doing, it committed serious error. I mean, what we're looking at here, what's relevant is the interplay between Mr. Bahura's ability to return to India, his eligibility for classification as a refugee, and the external circumstances in India which materially affected his willingness and ability to return. So the events of 2002 eliminated Mr. Bahura's chance for a safe return to his home and forced him to abandon his family, his community, and his life in India. In short, they made him a refugee. Okay. Thank you. Could I ask a question? Yes, sir. Your client entered the United States April 5, 2001. During that period, one-year period of time, he became aware of the February and March 2002 Hindu-Muslim riots, as well as the destruction of his family farm and home. Why didn't he apply for asylum during the one-year period? Well, unfortunately, Mr. Bahura's family home and his other construction projects had been attacked previously. What really brought home the danger to him was the disappearance of his two older brothers following threats by the police. So in addition to the rioting in February, there was substantially more rioting in September of that year. And beginning in August, his brothers, his two older brothers, had sought to seek redress for the harms the family suffered. Well, did he testify on the disappearance of his two brothers in August or September 2002? Yes, Your Honor. Was the triggering point which put him over the top? And he says, no, I didn't want asylum? Yes, Your Honor. He testified before the immigration judge initially that it was only after his brothers disappeared that he began thinking, quote, in terms of asylum. And I think this is key, especially within the cultural context, because with the disappearance of his two brothers, one following an arrest by the Indian police and one following threats by the Indian police, Mr. Bharara became the only adult male member of his immediate family. Well, but he says that he fears going back the day he leaves India. So it's not like he had to wait for the brothers to disappear for him to have a fear of going back. He answers yes to the question, were you afraid to go back when you left India? He does say that he was afraid. There's no dispute as to his fear. But what he also testified was that in spite of his fear, he had always planned to return, as he did previously in 2000. That was the case in Fakhri also, that he had that fear. Yes, Your Honor. But he didn't have an asylum case in Fakhri. My understanding of the factual predicates of Fakhri was that there was no decision as to whether he would have had an asylum case prior to the events which he argued may have changed circumstances. Well, in this case, we do have that. Yes, Your Honor. As I understand it. You know that retroactively when the board decides that you do have a case. As they say in Fakhri, you may have a weak case and you don't have to do it then if a stronger case develops. How do you know whether you have a case the board's going to determine is sufficient? As a layperson, you would have no way of knowing that. Well, even as a lawyer or a judge, you might not. It's true, Your Honor. Well, that case, nobody ever needs to apply within the one year because you don't know whether you've got a good enough case. No, Your Honor. This goes back to the hypothetical that I mentioned earlier. This is not a case where somebody waited more than a year and then ultimately decided or determined that things were not going to improve. There needs to be that objectively verifiable certainty. When did the brothers disappear? I'm sorry? When did the brothers disappear? In August and September of 2002. Mr. Bahura applied for asylum in December, just two months after that. And when did he land in the United States? In February of 2001. I'm sorry, in April of 2001. But the riots started within that period of February or March. Yes, Your Honor. There were riots in February or March of 2002. But the riots had at that point not made the direct, tangible, and frankly devastating impact on Mr. Bahura's family and life in India. In the first riot, there were 59 people killed. In the riot in September, there were over 1,000 Muslims killed. It was the riot in September that contributed to his filing the application. Yes, Your Honor. The riots in and around September 2002 had a substantially more pronounced impact on Mr. Bahura's situation and his chances for a safe return. Okay. Thank you. Thank you. The case is argued with sense of middle ground, Your Honor. Thank you.
judges: Kozinski, Reinhardt, Timlin